We are now going to move to Appeal 23-2672. This is Pilar Domer v. Menard, Inc. And we'll begin with argument from the appellant, Ms. Gold. Good morning, Your Honor, may it please the Court, Sophia Gold, on behalf of the plaintiff, appellant, Ms. Domer, and the putative class. Menard's, as the party seeking to compel arbitration, bears the burden of establishing assent to its contractual terms. Menard's can't do that when it presented consumers like Ms. Domer with a cluttered checkout screen when the hyperlink to its terms of service was on the other side of the page and the large blue button that consumers were required to click. What was cluttered about it? I got your point about it's on the other side of the page, but what was cluttered about it? There's several points of information that's being presented. What should they have done? You know, I love reading these cases, well, it was blue, it should have been green. It was on the left side of the screen, it should have been on the right side of the screen. I think, doesn't this, I mean, doesn't this seem, I mean, like, you know, your point, they talk about gift cards first, right? Well, should they have talked about it second, would they have made all the difference here? If it was the second sentence instead of the first? Absolutely, Your Honor. This court in Skoros versus TransUnion actually provided website owners like Menard's with the roadmap. This court in Skoros said very clearly that the way to put consumers on notice is to place a hyperlink to the agreement next to an I accept button that unambiguously pertains to the hyperlinked agreement. So I would contend that there are two ways that Menard's could have done that on this very screen. They could have included a checkbox, that's the obvious way, that's the easy way, include a checkbox that says I agree to the terms of service. But they didn't actually have to do that. What they also could have done is they could have included a much larger disclaimer right next to the submit order button that said by continuing and clicking submit order, you're agreeing to these terms, blue hyperlink, here you go, here are the terms that you're agreeing to. Courts across the country have held that that is sufficient when you are providing- Yeah, they could have, but did they have to? Well- It's a weird thing to me because you've got this, you're arguing over a $1.40 fee, right? That's what you're arguing over. I mean, I understand you want a class and you want 100 million people in the class arguing over the $1.40 fee, which is clear and obvious, right on the screen, right? And then you're saying the terms, they could have been a little bit clearer on the website, which by the way, Menards has an extraordinarily simple website. You compare it to Amazon's, which is, boy, Amazon, it's hard to find what you're looking for in Amazon, not for the Menards screen. It's almost so simple it looks like basic. Well, Your Honor, I would have to respectfully disagree with you and I would refer, Your Honor, to, for example, the Uber screen that the First Circuit looked at in Cullinane. There were hardly any words on the page of that app. And one of the terms was, by clicking continue, you're agreeing to the terms of service. And the First Circuit still had no trouble in finding that that did not constitute reasonable notice, that those terms of service were not clear and conspicuous because they were not in all caps, they were not larger than the rest of the text on the page, it was easy to overlook them. And this- Ms. Gould, I didn't see any indication in this record that you all had asked for a jury trial on the issue of arbitrability, which the FAA allows. That's correct. We have not asked for that, Your Honor. Why- I don't know about my colleagues, but we've presumably all read not quite as many of these cases as you and your opposing counsel have, but I find myself saying, why on earth should I be deciding this? Why don't- why isn't this a jury issue suitable for expert testimony from experts on web user interface design? I will tell you that as a practical matter, if every dispute about arbitration were to go to trial, the courts would be flooded with these sorts of trials. I will say- It would only take a few, I would expect. Courts have said that if you can decide the issue as a matter of law, and here the facts are undisputed, the court is free to do that. Of course, as the Second Circuit pointed out in Nicosia v. Amazon when they remanded and said it is not clear that a- that reasonable minds could differ as to whether assent could occur here. That would be another option for this court, is to remand and determine that reasonable minds could differ and send it back. Absolutely, Your Honor. I think that would probably be a bench trial given that neither party has requested a jury trial, but absolutely we could go to trial on this issue. The problem is that the court decided it as a matter of law on the lower level. Well, you didn't- also did not ask for a hearing, did you? The court decided without a hearing. You did not ask for an evidentiary hearing, did you? We did not ask for an evidentiary hearing, that's correct. The Nicosia case is tough for you, though, because when you look at the Amazon screen versus this screen, the Amazon screen is just so much more complicated. I disagree, Your Honor. I actually think that the Nicosia case is very similar to what's going on here, in part because in that case, the very top of that page said review your order, and then it was right under review your order where it said by placing your order, you agree to our terms of service. And if you put yourself into the mind of a consumer who's going quickly through these screens trying to check out, the couple of places where their eyes might go might be the very top of a page, because we read left to right, because we look at headings to see what the page is about, and then the buttons where your eyes are directed to go, where the website designer has specifically directed consumers to go. And in this particular page, we don't have the terms of order at the top of the page right underneath the heading. We have it at the very, very bottom. And instead, we have this large button over here that says submit order. It's the only thing in blue that's on the page. It's very clear that the eye is directed to go to the submit order button, and you can miss this disclaimer entirely. It's very easy to miss this disclaimer. And even if one were to see this disclaimer, when you read it, you go to see that it's about gift cards. And as every child is taught in grade school, topic sentences are important. They focus the reader as to what the paragraph is about. Should they have had another paragraph? Because then I think you'd be arguing they had two. They should have had one, right? Should they have another, please note, please note, please note, please note, with every little thing separated, so you had to read four please notes? I will be clear. I do not think that even if this gift cards, those first two sentences were eliminated, even if it just said, please note, by submitting your order, you accept our terms of order, and it was in this size font, and with this coloring, without an all caps, without a underline, without any sort of emphasis that this is a hyperlink that you need to read and that this is very important, I still believe that this would not be enforceable. However, because those first two sentences are in there, I think it's a much easier case. I think it... I just wonder, in 2024, if anybody ever buys anything on the internet, ever, not realizing that they're agreeing to some terms of order at this point in the world that we live in. Well, it was just in 2016, that wasn't that long ago, when this court in Skoros said, a person using the internet may not realize that she is agreeing to a contract at all. And it was just last year that the Ninth Circuit in Berman versus Freedom Financial Network said, because of the nature of online contracting, the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers. This is the framework that courts across the country have established as to what's reasonable. Maynard's very easily could have designed its page to follow that framework, and they didn't. Would you like to reserve the remainder of your time? Yes, thank you, Your Honor. Thank you, Ms. Gold. Mr. Titici, we'll move now to you.  May it please the court. Mark Titici on behalf of the FLE Maynard, Inc. Your Honor, I want to start, I guess, with Judge Hamilton's question about, is this a question of fact, question of law? I agree with Ms. Gold. Courts say when the facts are undisputed, as they are here, it's a question of law that can be decided by the court. The Ninth Circuit actually has a case that really walked through that question in detail. It's an Oberstein case. It's 60 F Fourth, 505, I think it was actually Judge Boggs from the Sixth Circuit sitting by designation, but it really walks through that analysis in detail. And again, as Your Honor noted, Ms. Gold didn't request a hearing here, so I think we're pretty clearly in territory where this is a question of law that Judge Peterson correctly decided in the first instance in this court is reviewing without regard to a factual question. Second, on Nicosia, Your Honor, the procedural posture there was a little bit different, again, related to the factual question. The Second Circuit had an unusual procedural posture. It was considering the case on a motion to dismiss, not the motion for summary judgment like style here. So basically, it concluded if you could plausibly state that you didn't have notice, it remanded for what you do when you deny a motion to dismiss. You move into discovery, and that's what happened in that case. So again, a different context in here. I guess Ms. Gold spends a lot of time both in the brief and here talking about the location of the disclosure on the page. And I guess I just want to be clear about what that factor in the sort of five-factor balancing test really is. Is it located in a place that a consumer is likely to see it in a transaction? The Second Circuit has talked about that in a couple of different cases. The Schnabel decision is one. It said that you have to put the terms and conditions at a place and at a time in the transaction when the consumer is likely to associate it with making a purchase. I respect the courts that have developed this five-factor test, but it seems like an unavoidably factual question in which parties are asking or courts are volunteering to act as reasonable consumers. What's your best case for treating this page, the disclosures on this page, as sufficient as a matter of law? It seems like you're asking us to go further than any other court has, but maybe I'm missing something. No, I think, Your Honor, that I think Meyer and the Second Circuit is probably the closest. It's the Uber case. But that's a tiny little simple little screen on a phone as compared to this much busier. No, it certainly has more to it, and I think you're right, Your Honor, that there's a significant difference between phone screens and either app displays or websites rendered on phones and websites. I think you're right, Your Honor, so let me answer that two ways. I think you're right, Your Honor, that there is no case that is presenting a website that looks like this. I think Judge Kirsch is right. This is not the visually bewildering Nicosia screen from Amazon. It's also not exactly the display you have in Meyer. But I think that when you transpose that framework or that screen onto a web platform, I think that they're significantly similar. For example, there really isn't a lot going on here. This isn't, again, the visually bewildering Amazon screen. Even in, to Ms. Gold's point about the location of the disclosure, even in Meyer, it wasn't directly below the button. You had register for your Uber account, and then right below that is link to your PayPal account, and link to your Google Wallet account. And then below all that, you have the disclosure, which, again, when you're talking about a three-inch phone screen... Yeah, but there's also this problem. I've got to say, what this is doing at the end of a paragraph about gift cards is... Yeah. I assume that your client uses consultants to help with user interface design. That's beyond the scope of my knowledge. Probably not in the record. One can assume that that's not someone just sitting in a room somewhere. Yeah. And what I'm thinking is, I assume this was a pretty thoughtfully designed user interface. There are lots and lots of considerations that go into that. And my guess is that making sure the consumer knows there's an arbitration agreement here is a relatively low priority in that design. Certainly, that's the way it appears here. So why not just treat this as a factual question? Yes, it may be expensive, but if the stakes are sufficiently high, rather than having us try to play amateur, average consumers? Yes. I do hear that question, that concern. I think, again, two answers. One, or maybe three. So, again, Ms. Domer hasn't asked for that, hasn't asked for this to be treated as a factual question. Everybody agreed that the facts are undisputed. And in a lot of, I guess, the distinction between something that's fact-intensive, which this is certainly fact-intensive, but still undisputed. There are no disputed facts here. But applying a five-factor balancing test as to how a reasonable consumer is likely to respond to this is, as a matter of law? I understand that, Your Honor. But for better or worse, that's how the courts have treated it, including this one. And there are lots of, I understand, factual issues that are at issue here. You're balancing them all. But at the end of the day, it's like with a lot of things. Do the undisputed facts add up to a particular tort, reasonable notice? What's the particular state of mind? And it's just a question at the end of the day. Does it clear that legal threshold when you add those various facts up and you balance them against each other? I do want to spend a little bit more time, if I can, Your Honors, on the proximity point. Because, again, I think in Ms. Domer's brief, it really gets boiled down to, is it next to the button? But that's really not what the factor is. Is it, as Judge Peterson found below or said below, is it linked to the transaction in a way that is going to be within the flow of the transaction? It's not something that's buried in the copyright bar down at the bottom of the screen. It's right below your payment and billing information where, as he noted, users are going to look at before they say, here, charge my credit card, to make sure they've put in that information correctly. I don't want to jump from enforceability to scope, Your Honors, but if you have no other questions. You don't have an issue about scope. OK. All right. Fine. In my opinion. So then I won't spend more than a moment then on scope. I just wanted to note that in Ms. Domer's reply brief, she notes the theory that there are two contracts here, not one. In the district court, she refers to the contract singular. In her opening brief in this court, page 38 expressly acknowledged that the arbitration agreement covers the purchase contract. She's pivoted in her reply brief. I just wanted to note, since we haven't briefed in response to that, that that argument is waived and not fairly before the court. But unless there are other points on enforceability, I'll say that we just respectfully request that. Would this be characterized as between a CLCRAP and a BrowseRAP? Yes. I think that's right, Your Honor. I think you can, I mean, again, I think you can, depends what you mean by CLCRAP, I suppose, because you do have to click and, but yes, I think it's in that odd no man's land between the CLCRAP and the BrowseRAP. It's certainly not a pure BrowseRAP agreement because there is a disclaimer and a note that you have to take some action to signify your acceptance. But it's not, it's also not the click a box that says, you know, click here to signify your acceptance. And I do think that at the end of the day, I guess one more point, Your Honors, that's the ultimate ending place of Ms. Domer's argument here is that if the argument that, well, you could have done it better. You could have put it right under the button. That lands us, eventually, when you ski to the bottom of that slope, you land in a place where a checkbox is the only way you can do it because you can always do that. But that's not the question under Wisconsin or any other state's law that we're aware of. It's just, was there reasonable notice? And given all the facts and circumstances that are undisputed here, there was. Thank you, Mr. Titici. Thank you, Your Honor. Ms. Gold, we'll go back to you now for rebuttal. I just want to pick up where you left off, Judge Brennan, as to whether this is click wrap, browse wrap, or something else. As we all know, click wrap is generally enforceable. That's a way to secure assent. Browse wrap is generally unenforceable. We're not aware of any cases which have held browse wrap to be enforceable. This might be termed something called sign-in wrap in the case law because it has this sentence, by submitting your order, you accept our terms of order. But we're not aware of any federal appellate authority when that sign-in wrap is entirely disconnected from the button that you're actually clicking to submit the order. And read in the context of this paragraph, as you pointed out, Judge Hamilton, you could actually interpret this sentence to mean, by submitting your order using a gift card, you accept our terms of order. It's not at all clear that simply by clicking this big blue button, you are agreeing to the terms of order, which are also not even contained in that actual sentence. They're below that in green, which the rest of the page contains several green fonts as well, making it also inconspicuous. Thank you, Ms. Gold. Thank you. Thank you, Mr. Chichich. The case will be taken under advisement. Thank you.